**UNITED STATES FIDELITY AND GUARANTY COMPANY,**
etc., Plaintiff,

v.

**ALGERNON–BLAIR, INC., etc., et al., Defendants.**

**Civ. A. No. 88–T–630–N.**

United States District Court,
M.D. Alabama, N.D.

Nov. 8, 1988.

---

L. Graves Stiff, III, Thomas L. Selden, Starnes & Atchison, Birmingham, Ala., for plaintiff.

William D. Coleman, Capell, Howard, Knabe & Cobbs, Montgomery, Ala., for Algernon–Blair.

Davisson F. Dunlap, Jr., Pennington, Wilkinson, Dunlap, Butler & Gautier, Tallahassee, Fla., Gordon Thames, and Howard A. Mandell, Mandell & Boyd, Montgomery, Ala., for Pelzer Homes, Inc. and William G. Thames.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff United States Fidelity & Guaranty Company (USF & G) has filed this action against defendants Algernon–Blair, Inc., Pelzer Homes, Inc., and William G. Thames, seeking declaratory relief under the Declaratory Judgment Act, 28 U.S.C.A. § 2201. Algernon–Blair has filed a cross-claim against Pelzer Homes and Thames, charging them with misrepresentation and fraud, and breach of contract. Before the court are Pelzer Homes and Thames's motions to stay or dismiss the complaint and cross-claim and in the alternative for a more definite statement as to the complaint. The court heard oral argument on these motions on November 7, 1988. For the reasons that follow, the court concludes that the motions to dismiss the complaint and cross-claim should be granted and that this cause should be dismissed as to all parties and claims, albeit without prejudice.

### I.

#### A.

In September 1987, Pelzer Homes and Algernon–Blair entered into a contract for

the construction of a 120–unit apartment complex in Tallahassee, Florida. USF & G issued bonds securing Algernon–Blair's performance of the contract, and securing payment by Algernon–Blair to all labor and material suppliers for services and materials rendered in connection with the contract. Algernon–Blair, the general contractor, was the principal and Pelzer Homes, the owner, was the obligee of these bonds. In exchange for the issuance of these performance and payment bonds, Algernon–Blair entered into a "Master Surety Agreement" with USF & G, committing itself to indemnify USF & G for any losses resulting from Algernon–Blair's default on the bonds.

Algernon–Blair began construction of the complex in January of this year and continued until sometime in the spring when Pelzer Homes terminated the construction agreement, charging Algernon–Blair with breach. Pelzer Homes and Thames then notified USF & G that they considered Algernon–Blair in default, and they requested USF & G to assume responsibility for the construction project under the performance and payment bonds. Pelzer Homes and Thames also informed USF & G that they had solicited bids from other contractors to complete the construction job.

Pelzer Homes and Thames received three bids from this solicitation. Having heard nothing from USF & G to suggest that it

would assume responsibility for the completion of the project, Pelzer Homes and Thames entered into a contract with one of the bidders to complete the complex.[1] Although USF & G never consented to this second contract, completion of the project is now proceeding, and Pelzer Homes and Thames apparently make no immediate demands on USF & G pursuant to the bonds.[2] So far as the court has been informed, construction is not yet finished, and final cost figures on the project are thus not yet available.

After the breakdown of their contractual relationship, Pelzer Homes and Thames filed suit against Algernon–Blair in state circuit court in Leon County, Florida, alleging fraud and breach of contract. Algernon–Blair defended and filed a counterclaim in that litigation, alleging fraud and breach against Pelzer Homes and Thames and filing a lien against the property in question. This state proceeding is still pending. USF & G filed the action at hand nearly two months after Pelzer Homes and Thames filed in state court.[3]

### B.

After stating its factual allegations, USF & G asks this court to declare the rights and obligations of the parties with respect to the construction project at issue in the case, and to declare the rights and obligations of USF & G with respect to the

1. After the formation of the substitute contract, USF & G informed Pelzer Homes and Thames that, based on its investigation of the matter, it did not believe direct action pursuant to the bonds (that is, payment of the demanded sums or confirmation of the substitute contractor) would be appropriate.

2. In its complaint, USF & G mentions in a factual section that Pelzer Homes and Thames demanded payment of certain labor and material costs from USF & G pursuant to the terms of the payment bond. USF & G has not provided the court with any further detail on this demand, and none of the parties address such a demand in their briefs. At oral argument on the motions, USF & G conceded that Pelzer Homes and Thames presently make no demands pursuant to the payment bond, and that the central issue in this case relates to USF & G's potential liability under the performance bond.

USF & G also makes much in the complaint of threats from Pelzer Homes and Thames relating to USF & G's "bad faith" conduct in responding to the request to assume responsibility for completion of the construction contract. At oral argument, however, Pelzer Homes and Thames clarified this point, stating that they had no intention whatsoever of charging USF & G with bad faith conduct during the time preceding filing of this lawsuit. Thus, this issue also presents no present controversy for the court to resolve.

3. Thames is a party to this action because USF & G alleges that at some point Thames acquired all of Pelzer Homes's interest in the property. From materials attached to Pelzer Homes and Thames's motions, it appears that Thames was president of Pelzer Homes, Inc. for at least part of the period covered by this litigation.

claims made the subject of the pending state litigation and the two bonds.

The cross-claim contains four counts. Algernon–Blair charges Pelzer Homes and Thames with fraud and misrepresentation in Count I and with breach of contract in Count II. In count III, Algernon–Blair challenges Pelzer Homes and Thames's asserted termination of the construction contract "for convenience," asserting in essence another breach count. Count IV seeks a declaratory judgment from this court regarding Algernon–Blair's rights to certain City of Tallahassee rebate payments relating to the construction project.

In the pending motions, Pelzer Homes and Thames make a number of arguments urging this court to dismiss or stay USF & G's case.[4] Two of these arguments merit discussion in this opinion. In the next section, the court will explain why it lacks jurisdiction to hear the dispute in this case. In the subsequent section, the court will explain why, even if jurisdiction were present, it would dismiss this case under its inherent discretion to hear declaratory judgment actions.

## II.

### A.

USF & G argues that its complaint is properly before the court by virtue of diversity jurisdiction. 28 U.S.C.A. § 1332(a). USF & G is a corporate citizen of the State of Maryland; Algernon–Blair and Pelzer Homes are corporate citizens of the State of Alabama; and Thames is also a citizen of the State of Alabama. Despite the fact that USF & G appears to have satisfied the jurisdictional elements of § 1332(a),[5] Pelzer Homes and Thames argue that this court should realign Algernon–Blair as a co-plaintiff and dismiss for lack of complete diver-

sity between plaintiffs and defendants. The court agrees with this argument.

 Under our dual system of government, federal courts have limited, as opposed to general, jurisdiction. Thus a necessary inquiry in every suit filed in federal court is whether the court has authority to hear the case at all. Since individuals cannot extend the jurisdiction of the federal judiciary, the court bears the responsibility of resolving this inquiry accurately; the parties may not waive the requirements of subject matter jurisdiction, and the issue is subject to review at virtually all stages of the proceedings, including before the Supreme Court of the United States. *E.g., Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986); *see also* Fed. R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). This principle imposes a duty upon the court, when a party invokes diversity jurisdiction, to ensure that no plaintiff is a citizen of the same state as any defendant before proceeding to the merits of the dispute. The manner in which USF & G characterizes the parties in its complaint is not dispositive of this jurisdictional issue. *City of Indianapolis v. Chase National Bank,* 314 U.S. 63, 70, 62 S.Ct. 15, 17, 86 L.Ed. 47 (1941). In *City of Indianapolis,* the Supreme Court clearly enunciated this point:

It is our duty, as it is that of the lower federal courts, to "look beyond the pleadings, and arrange the parties according to their sides in the dispute." ... Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary "collision of interest," ... exists, is therefore not to be determined by mechanical rules. It must be ascertained from the "principal purpose of the suit,"

---

4. Specifically, Pelzer Homes and Thames argue that the complaint fails to state a claim upon which relief can be granted; that this court lacks jurisdiction to hear the case; that the court should abstain from hearing the case because the same claims and issues are currently under litigation in state court; and that venue in this district is improper.

5. The statute reads in relevant part: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C.A. § 1332(a). The amount in controversy requirement is satisfied in this case.

... and the "primary and controlling matter in dispute."

*Id.* (citations omitted).

The duty of looking beyond the pleadings to determine proper alignment is a particularly difficult one for a district court to perform. In contrast to its usual approach in analyzing a motion to dismiss, the court must critically assess the substance of the alleged controversy to determine the goals and interests of each party. Given the early stage at which this must be done and the undeveloped factual field, experienced judges may well draw different conclusions from the same situation. *See* 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3607 at 438–40 (1984) (describing the Court's sharp division in *City of Indianapolis, supra*). The determination is assuredly more difficult in this case because of the many contingencies inherent in USF & G's declaratory judgment claim. Indeed, the fact that USF & G seeks a declaration of the parties' rights and obligations with respect to the contract, but presents no direct claims in contact or fraud against any of the defendants, nor any apparent demands pressed upon it by the defendants, forces the court to speculate to a certain degree as to USF & G's specific interests in the suit. This unfortunate necessity arises from the combination of USF & G's pleading and the unavoidable issue of subject-matter jurisdiction.

■ In any event, the appropriate test in this circuit to determine whether parties are properly aligned as opposing parties in a lawsuit is "whether there is an actual or substantial controversy" between them. *Weller v. Navigator Marine Inc.*, 737 F.2d 1547, 1548 (11th Cir.1984) (per curiam) (quoting *Indemnity Insurance Co. v. First National Bank*, 351 F.2d 519, 522 (5th Cir.1965)). "We look to the true interest of the parties and the positions asserted by

them before the ... court in making this determination." *Id.*

■ USF & G's potential liability to Pelzer Homes and Thames under the terms of the "performance bond" is contingent on three factors. First, Algernon–Blair must be in default under the contract; second, Pelzer Homes must declare Algernon–Blair to be in default; and third, Pelzer Homes must have satisfied its contractual obligations. All parties admit that the second element is satisfied. However, both of the other prerequisites to USF & G's potential liability under the performance bond involve the essential dispute in Algernon–Blair's cross-claim against Pelzer Homes and Thames—that is, whether either Pelzer Homes or Algernon–Blair or both are in breach of contract. Algernon–Blair seeks a finding that it is not in breach and that Pelzer Homes is. But if Algernon–Blair is successful on its cross-claim, then USF & G will enjoy a declaration that it bears no liability under the performance bond to either Pelzer Homes or Thames. In this regard, USF & G's interest clearly coincides with Algernon–Blair's.[6]

USF & G points to the Master Surety Agreement as evidence of its adverse position against Algernon–Blair. For support, USF & G relies on *Fidelity & Deposit Co. v. City of Sheboygan Falls*, 713 F.2d 1261 (7th Cir.1983). In *Sheboygan Falls*, the plaintiff surety issued a performance bond for a contractor in its construction contract with two cities, and entered into an indemnification agreement at the same time with the contractor. After completion of the contract, the cities decided that the contractor had not adequately performed, and they demanded compensation from the surety under the performance bond. The surety then filed a declaratory judgment action in federal court against the cities, the contractor, and various subcontractors.

The Seventh Circuit found the parties properly aligned. The court acknowledged

---

**6.** The terms of the payment bond also include a number of conditions on USF & G's obligations, although neither Algernon–Blair's default nor Pelzer Homes's performance under the contract is an explicit condition. Given the fact that USF & G concedes that it is subject to no present demand under this bond, *see* note 2 *supra,* the court feels no obligation to speculate at this point on the degree to which USF & G's potential liability under the payment bond is intertwined with the issues of breach and fraud.

that the contractor's concession of liability under the indemnity contract and its defense that it had not breached the construction contract effectively placed the contractor on the same side of the suit as plaintiff surety. However, the court emphasized that jurisdiction "depends on the facts as they exist when the complaint is filed rather than when the answer is filed, which in this case was months later." *Id.* at 1266. The court viewed the stances adopted by defendants in response to the complaint as irrelevant to the issue of alignment for diversity purposes. The court considered it unlikely that the plaintiff knew that the contractor would concede liability at the time the complaint was filed, and also considered it unlikely that the plaintiff would even have included the contractor in the suit if plaintiff had sought to "manufacture" diversity jurisdiction.[7] 713 F.2d at 1267. Thus, the court concluded that the parties were properly aligned for purposes of federal jurisdiction.

The facts of *Sheboygan Falls* are substantially similar to those in this case.[8] The Seventh Circuit's reasoning in that case, however, displays some doubt as to the continuing vitality of the Supreme Court's opinion in *City of Indianapolis*. The *Sheboygan Falls* court noted, "There is, admittedly, some basis in the majority opinion in *Indianapolis* for requiring realignment whenever the plaintiff is aligned on the primary issue in suit with the defendant, though in conflict on a secondary issue. *See* 314 U.S. at 72, 62 S.Ct. at 18." 713 F.2d at 1267. The court nonetheless rejected such a distinction, in light of its "distaste for spongy jurisdictional tests." *Id.* (citing *Illinois Dep't of Public Aid v. Schweiker*, 707 F.2d 273, 278–79 (7th Cir. 1983)). *See also American Motorists Insurance Co. v. Trane Co.*, 657 F.2d 146 (7th Cir.1981). In so doing, the *Sheboygan Falls* court silently adopted the dissenters' position on the primary/secondary issue.

Justice Jackson in dissent in *City of Indianapolis* wrote: "[W]hether either of the rights asserted is more substantial than the other depends on the outcome of the litigation, which can hardly be used to determine jurisdiction which must exist at the beginning of the litigation." 314 U.S. at 79, 62 S.Ct. at 21 (Jackson, J., joined by Vinson, C.J., Roberts, and Reed, JJ., dissenting).

This observation is not without merit, but this circuit clearly continues to adhere to the majority's mandate to search out the "principle purpose of the suit and the primary and controlling matter in dispute." *Indemnity Insurance Co. v. First National Bank*, 351 F.2d 519, 522 (5th Cir.1965) (citing *City of Indianapolis*, 314 U.S. at 72, 62 S.Ct. at 18). A brief review of *Weller v. Navigator Marine, Inc.*, 737 F.2d 1547 (11th Cir.1984) (per curiam), demonstrates the fact. Weller filed suit in federal court seeking a declaratory judgment in a dispute involving real property. Weller owned the property subject to an option to buy held by Navigator Marine. Weller contracted to sell the property to Corzilius and Martini. In federal court, Weller named Navigator Marine, Corzilius, and Martini as defendants in the action to declare the validity of the option. Navigator Marine moved to dismiss for lack of subject-matter jurisdiction, urging the court to realign the parties for diversity purposes. The district court denied the motion, reasoning that Corzilius and Martini were adverse to Weller because they would have an action against him for breach of contract if the court validated Navigator Marine's attempted exercise of its option. The court then granted Weller's motion for summary judgment on the grounds that Navigator Marine's option had expired prior to any attempt to exercise it.

The Eleventh Circuit reversed, finding it "clear that the interest[s] of Corzilius and Martini are the same as the interest of

---

7. In a later part of the opinion, Judge Posner, writing for the court, speculated that the contractor may not have been an indispensable party to the suit under Fed.R.Civ.P. 19. The court considered this observation significant to its conclusion that the parties had not collusive-

ly created diversity jurisdiction. 713 F.2d at 1268.

8. One significant difference, however, is the fact that here the breach and fraud issues are the subject of a currently active lawsuit in Florida state court.

Weller." *Id.* at 1548. The court acknowledged that the two contracting defendants would have an action against Weller if Navigator Marine prevailed in the declaratory judgment action. The fact that all of the interests of the reformed plaintiffs were not entirely compatible did not foreclose the determination that their positions were "substantially identical to that of Weller in the suit before the court." *Id.* at 1549. *See also Dolch v. United California Bank,* 702 F.2d 178, 181 (9th Cir.1983) ("Realignment may be required even if a diversity of interests exist on other issues.") (citing *Eikel v. States Marine Lines, Inc.,* 473 F.2d 959, 964 & n. 6 (5th Cir.1973)).

This court is bound by this logic in the case at hand. USF & G may have an action against Algernon–Blair for indemnity at some point if Pelzer Homes and Thames successfully renew their demands under the bonds. USF & G does not appear to be subject to any immediate demands under the bonds, and its liability under the performance bond now seems contingent both on the results of the contractual dispute Pelzer Homes and Thames have with Algernon–Blair, and on the unascertained fact of whether the completion contract will generate any costs for Pelzer Homes and Thames which might be covered by the bond. The possibility of indemnity after all of these contingencies are eventually resolved does not alter this court's conclusion that Algernon–Blair's interest is substantially identical to USF & G's with respect to the primary subject of this action. That primary dispute is the breakdown and eventual termination of the contractual relationship between Pelzer Homes and Algernon–Blair—in other words, the issues of breach and fraud.

As Pelzer Homes and Thames have stressed in their pleadings, USF & G's prayer for relief is no marvel of clarity. USF & G has not specified what "rights and obligations" they would have this court declare. Nonetheless, this court must ascertain the interests of the parties, and hence their alignment in the lawsuit, on the basis of what is before it; the court cannot wait for substantial evidentiary development. Nor does the court understand the principle that jurisdiction must be based on facts as they existed at the time of the complaint to alter the court's conclusion. If the court has referred to facts *revealed* in the motions and cross-claim, it has nevertheless based its determination on the facts as they *existed at the time* of commencement of the action. The task is to look beyond the pleadings; the court must not limit its vision to the four corners of the complaint. To illustrate this point, language from *Weller* is again telling. After concluding that the interests of the contracting defendants coincided with those of the plaintiff, the court noted that it would have come to the opposite conclusion "if, for example, Corzilius and Martini had taken the position that Navigator Marine's option was valid in an attempt to relieve themselves of their contract to purchase the property from Weller; however, this was not the case." 737 F.2d at 1549. Clearly, the stances that the named defendants adopt are highly relevant to the ultimate question of their proper alignment in the lawsuit.

To summarize, the court concludes that the true interests of USF & G and Algernon–Blair coincide as to the primary dispute in this lawsuit. Despite the fact that their interests may collide in a contingent secondary dispute, they are properly co-plaintiffs for purposes of this lawsuit. Since diversity does not exist, this court lacks jurisdiction to hear this case.

### B.

The court's conclusion in the preceding section dooms Algernon–Blair's cross-claim as well. Since Algernon–Blair does not, and cannot, refer to an independent ground of federal jurisdiction over the cross-claim, this court must dismiss it along with USF & G's claim. If the court lacks subject matter jurisdiction over a principal claim which would otherwise support a dependent ancillary claim, then the ancillary claim falls outside its jurisdiction as well. *IMFC Professional Services of Florida, Inc. v. Latin American Home Health, Inc.,* 676 F.2d 152, 159 n. 12 (5th Cir. Unit

B 1982); *Southern Trust Insurance Co. v. Griner*, 550 F.Supp. 39, 41 (S.D.Ga.1982).

### III.

Even if this court had concluded that Algernon–Blair was properly aligned as a defendant, it would refuse to hear this case on another ground: that this case should be dismissed out of due regard for the parallel proceeding in Leon County Circuit Court in Florida.

### A.

■ Both Pelzer Homes and USF & G agree, with ample support for their agreement, that a federal district court bears broad discretion in the exercise of its jurisdiction over declaratory judgment actions. *See, e.g., Brillhart v. Excess Insurance Co.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 1176, 86 L.Ed. 1620 (1942); *Angora Enterprises, Inc. v. Condominium Association of Lakeside Village, Inc.*, 796 F.2d 384, 387–88 (11th Cir.1986) (per curiam). The terms of 28 U.S.C.A. § 2201 themselves establish such discretion. "In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration...." § 2201 (emphasis added). The assurances of the Act's drafter, as well as "a multitude of cases," confirm the matter. *See* 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2759 at 644–45 (1983) (citing Borchard, *Discretion to Refuse Jurisdiction of Actions for Declaratory Judgments*, 26 Minn.L.Rev. 677 (1942)).

■ Of the many factors that might legitimately enter into a district court's decision whether to hear a prayer for declaratory relief, the existence of an ongoing state proceeding involving the same issues as the declaratory judgment action is among the most potent. *See Michigan Tech Fund v. Century National Bank of Broward*, 680 F.2d 736, 742 (11th Cir.1982); *Ven-Fuel. Inc. v. Department of the Treasury*, 673 F.2d 1194, 1195 (11th Cir.1982); *Hollis v. Itawamba County Loans*, 657 F.2d 746, 750 (5th Cir. Unit A Sept. 1981); 6A J. Moore, Moore's Federal Practice para. 57.08[3] at 57–44 (1984); *see also Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 126, 88 S.Ct. 733, 746, 19 L.Ed.2d 936 (1968) ("we reaffirm our prior holding that a federal district court should, in the exercise of discretion, decline to exercise jurisdiction over a diversity action raising issues of state law when those same issues are being presented contemporaneously to state courts, *e.g., [Brillhart, supra].*"). Exercise of federal jurisdiction in such a situation risks unnecessary commitment of scarce judicial resources, multiplicative expenditures on legal services, inconsistent rulings at numerous litigation junctures, and the appearance of disregard for the state trial court's authority and expertise in violation of basic norms of federal and state comity.

■ Of course, the ongoing Florida state court litigation would not serve as a *per se* bar to USF & G's declaratory judgment action. *See* Fed.R.Civ.P. 57 ("The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."); 6A J. Moore, Moore's Federal Practice para. 57.08[6.–1] at 57–54 (1984). In exercising its discretion in this situation, the district court must direct its attention to the adequacy of the state proceeding in resolving the disputes presented in the federal complaint. The Eleventh Circuit has stated that, "In its discretion, a district court may decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will *fully* resolve the controversy between the parties." *Ven-Fuel, Inc.*, 673 F.2d at 1195 (emphasis added). And "[t]he district court has discretion to decline to entertain a diversity action seeking a declaratory judgment and raising issues of state law when those same issues are being presented contemporaneously to state courts and thus will necessarily be resolved by the state courts." *Michigan Tech Fund*, 680 F.2d at 742 (citations omitted). The most recent Eleventh Circuit statement on the subject suggests that the relevant determinant is

not whether the state court litigation involves the identical issues *in form* as the federal action, but rather whether the substance of the federally pleaded issues will be resolved in state court.

Although Fed.R.Civ.P. 57 specifically provides that the existence of "another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate," a court, "in the exercise of the discretion that it always has in determining whether to give a declaratory judgment, may properly refuse declaratory relief if the alternative remedy is better or more effective." 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d, § 2758 at 621–23 (footnotes omitted). This is also true if there is a pending action in which *some* of the questions posed by the declaratory action *have or may be raised.* As Professors Wright, Miller and Kane have summarized:

> Unnecessary interference with state court litigation should be avoided. The Declaratory Judgment Act was not intended to enable a party to obtain a change of tribunal from a state to federal court, and it is not the function of the federal declaratory action merely to anticipate a defense that otherwise would be presented in a state action.

*Angora Enterprises,* 796 F.2d at 387–88 (citations omitted) (emphasis added).

Whether the *Angora Enterprises* court intended to modify the guidelines on a district court's exercise of its discretion or not, it is evident that this court must now examine what information it has about the ongoing state proceeding. The parties, including USF & G, agree that the complaint filed by Pelzer Homes and Thames in Leon County Circuit Court sets out numerous counts of fraud, breach of contract, and civil theft, all arising from disputes over Algernon–Blair's activities in the contractual relationship. Pelzer Homes and Thames contend there that Algernon–Blair overbilled and failed to meet adequately certain contractual specifications.

Algernon–Blair admits in its brief filed in this court in opposition to Pelzer Homes and Thames's motions that its federal cross-claim raises "essentially the same claims it had asserted in the Florida action." These claims, as related above, include fraud and misrepresentation, breach, and claims under Florida law for municipal rebates derived from circumstances surrounding the construction project.

USF & G asserts that the state court proceeding does not involve the same issues or parties as its federal action; that the state court cannot provide the relief requested by USF & G; and that this court would avoid piecemeal litigation and provide the most comprehensive resolution to the bundle of disputes presented. The court will address these contentions in order.

In Leon County Circuit Court, Pelzer Homes and Thames are suing Algernon–Blair and one of its employees. Algernon–Blair is suing Pelzer Homes and Thames. Thus the parties involved in that proceeding vary from the parties in this one only to the extent that USF & G is not a party to the Florida litigation. As pointed out by Pelzer Homes, this mainly results from the fact that USF & G has chosen not to invoke Florida's intervention rule to join that case and defend its interests therein. *See* Fla.R. Civ.P. 1.230;[9] *see also British Aviation Insurance Company, Ltd. v. Menut,* 511 So.2d 425 (Fla.Dist.Ct.App.1987). USF & G does not argue that intervention was unavailable to it. Its suggestion that the state court litigation does not involve the same parties as the federal litigation carries little weight.

Much the same may be said of its contention that different issues are involved in Leon County Circuit Court. USF & G's liability under the bonds at issue here is largely contingent on, and subordinate to, resolution of the primary issues of breach and fraud contested by Algernon–Blair, Pelzer Homes and Thames, as noted above.

**9.** "Anyone claiming an interest in pending litigation may at any time be permitted to assert his right by intervention, but the intervention shall be subordinate to, and in recognition of, the propreity of the main proceeding, unless otherwise ordered by the court in its discretion."

These are the same issues raised in the state court proceeding, and resolution of the issues there would settle much of the question of USF & G's current rights and obligations with respect to the other parties.[10] In its prayer for relief, USF & G asks this court to declare the rights and obligations of USF & G with respect to the claims made the subject of the pending litigation. And at oral argument, USF & G could point to no meaningful difference between the breach issues currently under litigation in state court and those this court would decide. Thus USF & G has virtually admitted, in its pleadings and before the court, the relevance of the state court litigation to at least some of the issues involved in the declaratory judgment action. As to the remaining issues, if any, this court is convinced that they are best resolved after the primary dispute between Algernon–Blair and Pelzer Homes is settled.

USF & G's next point is that the requested relief is unavailable in state court. USF & G does not expound on this contention by pointing to inadequacies in Florida's declaratory judgment provisions, which are among the oldest and most liberal in the United States. Fla.Stat. §§ 86.011–86.111 (1987); *see generally* 19 Fla.Jur.2d 5–6 (1980). The court is not convinced that relief equivalent to that sought here is unavailable in state court.[11]

Finally, USF & G argues that, by hearing its complaint, this court would avoid piecemeal litigation and provide the most comprehensive solution to this dispute. Initially, the court observes that either this court or the Leon County Circuit Court could avoid piecemeal litigation with equivalent ease with all parties before it. Once again, USF & G's contention seems to be premised on its own choice of forum, rather than on the comparative ability of the two fora to provide comprehensive resolution. For support, USF & G cites *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). *Patterson,* to the extent it is relevant to this case, actually supports dismissal of USF & G's complaint.

In *Patterson,* the court of appeals dismissed a declaratory judgment case in light of a related state tort action, after the district court had tried the case and rendered a verdict. No party had moved for dismissal before the district court, nor had any party notified the district court of concurrent state proceedings. The Supreme Court mildly chided the court of appeals for its failure to consider "the existence of a verdict reached after a prolonged trial in which the defendants did not invoke the pending state actions." 390 U.S. at 126, 88 S.Ct. at 747. The prudential concern expressed by Justice Harlan in *Patterson,* essentially common sense conservation of scarce judicial resources, is present in this case, but as a factor supporting dismissal in favor of the prior state litigation. Moreover, in *Patterson,* the Court concluded that the state proceedings involved different issues than did the federal proceeding. *Id.* As explained above, USF & G has not convinced the court that such is the case here. The court concludes that for less risk of piecemeal or multiple litigation and waste of judicial resources results from refusing to hear this case than would result from hearing it.

USF & G does not present a persuasive argument why this court should exercise its discretion in favor of hearing the declaratory judgment action. This court is in no better position to afford USF & G the relief

10. Pelzer Homes and Thames note that another contingency on USF & G's liability is the successful completion of the contract to complete the construction job, which was unfinished at the time briefs were filed.

11. USF & G's argument is especially peculiar given that the rights and obligations as to which it seeks declaration are defined by state contract law. The question of which state law (presumably either Alabama or Florida) should be applied to the contractual dispute or to bond liability has not been presented by any of the parties in this court; USF & G does not argue in any event that the Leon County Circuit Court is in any sense less able to choose and apply the appropriate law to the facts than is this court. *See Hartford Accident & Indemnity Co. v. Hop-On International Corp.,* 568 F.Supp. 1569, 1573–74 (S.D.N.Y.1983).

it seeks than is the state court in which litigation is underway. *See Hartford Accident & Indemnity Co. v. Hop–On International Corp.*, 568 F.Supp. 1569, 1574 (S.D. N.Y.1983). USF & G has not suggested that it would suffer any prejudice in litigating its claims in that arena. Nor does it appear that a declaratory judgment action in this court would be significantly more convenient for the parties than the Florida litigation. Pelzer Homes, Thames, and Algernon–Blair all have counsel currently litigating in Florida. Algernon–Blair states in its brief opposing Pelzer Homes and Thames's motion to dismiss that it "does not strongly favor one forum over another for the trial of the case." The apartment complex is of course located in Leon County, as are certain witnesses relevant to the issues of breach and fraud. While the court does not question the assertion that USF & G would suffer some inconvenience by being forced to litigate, if at all, in Leon County, the relevant consideration is the convenience of all parties. The inconvenience to USF & G of litigating in Leon County, when balanced against the inconvenience suffered by the other parties who have already initiated litigation in the alternative forum and now must maintain parallel proceedings under different procedural rules and deadlines, does not present a compelling reason for the exercise of this court's jurisdiction.

In summary, USF & G has not shown that this court would more fully serve the needs of the parties or provide a more comprehensive resolution of the conflict than does Leon County Circuit Court. *See* 10A C. Wright, A. Miller & M. Kane, *supra*, § 2758 at 638. Since USF & G proffers no compelling reasons why the state court proceeding, which was commenced first and in which the same parties will dispositively litigate primary issues under state law, is an inferior forum for the presentation of its interests, this court concludes that "it would be uneconomical as well as vexatious for [it] to proceed" to resolution of those same issues. *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1175. Professor Moore authoritatively summarizes these concerns:

The maintenance of separate actions involving the same issues should be discouraged. Where a declaratory action presents issues which would necessarily be settled by another pending state or federal action, the court should weigh the relative merits of each of the two action as of the time of the hearing on the motion to dismiss. The decision on the motion to dismiss should be determined in the light of the purposes of the Act, and by the same principles that normally govern the exercise of judicial discretion in this field—whether a declaratory judgment would serve a useful purpose "in clarifying and settling the legal relations in issue," and whether it would "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." If after an overall balance of the comparative utility of the two actions, the court is unable to say that one is superior to the other, then it may properly employ the chronological test. For since, in that event, the two actions are equally beneficial, and since the two or more *in personam* actions may proceed concurrently (although a multiplicity of actions is undesirable), the court may apply a rule of thumb that if the declaratory action was first commenced, jurisdiction should be retained—otherwise that it should dismiss the declaratory action. Or, alternatively, the court may stay further proceedings before it until the other action has gone to judgment, so that in the event the issues raised in the declaratory action are not actually settled in the action for coercive remedy, the court could then proceed to render declaratory relief as to the unsettled issues.

6A J. Moore, Moore's Federal Practice para. 57.08[6.–1] p. 57–60 to 57–62 (1984) (quoting E. Borchard, Declaratory Judgments (2d ed. 1941)).

In a different context, the Eleventh Circuit has issued a general warning against federal usurpation of control over issues in pending state litigation:

Congress has expressed its concern over friction between federal and state courts.

Several judicial doctrines discourage needless conflict between the separate judicial systems. The continued vitality and independence of concurrent judicial systems require our sensitive consideration of ongoing proceedings in state courts. In short, federalism concerns require that a federal court "tread lightly" when a state proceeding is already underway. There is no indication that the state court here is incapable of resolving this dispute. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 675 F.2d 1169, 1173 (11th Cir.1982) (citations omitted).

Had USF & G properly asserted diversity jurisdiction, these concerns would nonetheless strongly support dismissal of the declaratory judgment action at hand.

### B.

 USF & G next argues that regardless of the weighty prudential concerns explicated above, the Supreme Court's decisions in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), restrict this court's traditional discretion to dismiss declaratory judgment actions. Since federal courts have reached conflicting answers to this suggestion, and since

the Eleventh Circuit has not definitely addressed the swelling conflict,[12] this court will express its views on the applicability of *Colorado River* and *Cone* to declaratory judgment actions involving state law issues.

Reviews of these two cases are legion, and this court need only briefly summarize them here. In *Colorado River,* the United States brought suit in federal court for a declaration of rights regarding certain parts of the Colorado River. One of the defendants to the federal suit subsequently filed in state court for a similar adjudication of rights. The Supreme Court eventually considered the district court's dismissal of the federal action in light of the parallel state proceedings. After determining that such a dismissal did not fall into any of the three recognized forms of federal abstention, 424 U.S. at 813–17, 96 S.Ct. at 1244–46, the Court proceeded to approve of the dismissal.

[T]here are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts. These principles rest on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Generally, as between state and federal courts, the rule is that "the pend-

---

**12.** One possible reading of *Angora Enterprises, Inc. v. Condominium Assoc.,* 796 F.2d 384 (11th Cir.1986), is that *Colorado River* and *Cone* apply fully to declaratory judgment actions in the Eleventh Circuit. In *Angora Enterprises,* the court reaffirmed the district court's inherent discretion to hear declaratory judgment actions involving issues covered in pending state proceedings. Immediately after restating the traditional view on discretion, the *Angora Enterprises* court launched into an application of *Colorado River.* 796 F.2d at 388–89. After citing the *Colorado River* factors, the Court finished its opinion by stating: "Since a determination of whether to exercise discretionary jurisdiction is primarily a function of the district court, we vacate and remand for an appropriate determination by the district court." *Id.* at 389.

The import of *Angora Enterprises* is unclear. The Eleventh Circuit stated that the district court retained the traditional discretion to dismiss the case. Faithful application of *Colorado River* and *Cone* would quite likely have barred such a dismissal under the facts of *Angora Enterprises,* however. Any doubt on this point is resolved by review of *Noonan South, Inc. v. County of Volusia,* 841 F.2d 380 (11th Cir.1986); *see also* discussion in text, *supra.*

Because of the ambiguous meaning of *Angora Enterprises* in light of *Noonan South,* this court agrees with Judge Spellman that "The Eleventh Circuit . . . has not addressed the distinction and cases such as *Angora* indicate that an analysis of *Colorado River* is warranted." *City Federal Savings Bank v. Dominion Federal Savings and Loan Assoc.,* 657 F.Supp. 477, 479 (S.D.Fla. 1987).

ency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction...." ... [This rule] stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.... Given this obligation, and the absence of weightier considerations of constitutional adjudication and state-federal relations, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention. The former circumstances, though exceptional, do nevertheless exist.

424 U.S. at 817–18, 96 S.Ct. at 1246 (citations omitted). The Court then went on to note four apposite factors to be contemplated when making such a dismissal. The Court added that no single factor should be considered determinative, and that "[o]nly the clearest of justifications will warrant dismissal." 424 U.S. at 819, 96 S.Ct. at 1247.

These observations, and the holding in *Colorado River*, were strongly reinforced in *Cone*, which also featured a parallel state and federal litigation scenario. The *Cone* court restated the *Colorado River* analysis, added a few more factors to the "exceptional circumstances" test, and warned that "the balance [should be] heavily weighted in favor of the exercise of jurisdiction" by the district court. 460 U.S. at 17, 103 S.Ct. at 937.

Since neither *Cone* nor *Colorado River* involved actions under the Declaratory Judgment Act, lower courts addressing the applicability of those decisions to such actions to the date of this writing have taken one of three tacks. Panels in the Second, Fifth, and Ninth Circuits have applied the *Colorado River* and *Cone* analysis undiluted to declaratory judgment actions. *See Law Enforcement Insurance Company, Inc. v. Corcoran*, 807 F.2d 38, 41 (2d Cir. 1986), *cert. denied*, 481 U.S. 1017, 107 S.Ct. 1896, 95 L.Ed.2d 503 (1987); *Giardina v. Fontana*, 733 F.2d 1047, 1052–53 (2d Cir. 1984); *Evanston Insurance Co. v. Jimco, Inc.*, 844 F.2d 1185, 1189–93 (5th Cir.1988); *Mobil Oil Corp. v. City of Long Beach*, 772 F.2d 534, 541–42 (9th Cir.1985).[13] These panels have, for the most part, assumed that the Supreme Court's unqualified language in *Colorado River* that dismissals or stays in favor of ongoing state proceedings were permissible only in "exceptional circumstances" applied to all federal actions, including those under the Declaratory Judgment Act. *E.g., Evanston Insurance*, 844 F.2d at 1191. As one court noted, "*Colorado River* itself involved a complaint for declaratory relief." *Mobil Oil*, 772 F.2d at 542.

Other panels from the same circuits have found that *Brillhart* discretion survived both *Colorado River* and *Cone*. *See Transamerica Occidental Life Insurance Co. v. DiGregorio*, 811 F.2d 1249, 1254 & n. 4 (9th Cir.1987); *Mission Insurance Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 n. 1 (5th Cir.1983); *see also Stephens v. Cobb County, Ga.*, 684 F.Supp. 703, 705–07 (N.D.Ga.1988) (cautiously avoiding applica-

**13.** The court hesitates to attribute the position of any of these cases to the Circuit as a whole. Outside perhaps the First Circuit, panels within each of the Circuits that have faced the issue have reached varying, sometimes contradictory, conclusions. The *Evanston Insurance* court, for instance, ignored often-cited contrary Fifth Circuit precedent. *See Mission Insurance Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601–02 & nn. 1 & 3 (5th Cir.1983); *Navistar International Corp. v. Emery*, 643 F.Supp. 515, 517 (N.D.Tex. 1985). Panels in the Second Circuit have expressly adopted the First Circuit's position described below, *see Lumbermens Mutual Casualty Co. v. Connecticut Bank & Trust Co.*, 806 F.2d 411, 414 (2d Cir.1986), quickly retreated from

that position, *Corcoran*, 807 F.2d at 41, and now apparently have moved haltingly back in that direction. *See General Reinsurance Corp. v. CIBA–Geigy Corp.*, 853 F.2d 78, 81 (2d Cir.1988). The Ninth Circuit has similarly retreated from its position in *Mobil Oil*. *See Transamerica Occidental Life Insurance Co. v. DiGregorio*, 811 F.2d 1249, 1253–55 (9th Cir.1987). *Cf. Fireman's Fund Insurance Co. v. PaineWebber Real Estate Securities, Inc.*, 690 F.Supp. 879 (N.D.Cal.1988) (declining to exercise jurisdiction over declaratory judgment under either a *Mobil Oil* or a *DiGregorio* analysis). *See also* 17A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4247 at 118 n. 5 (1988) (collecting cases).

tion of *Colorado River* factors in abstaining from hearing federal constitutional claim in light of ongoing state proceedings). Much like their counterparts above, these panels have mainly assumed without extended analysis that the Supreme Court implicitly distinguished declaratory judgment actions in the *Colorado River* and *Cone* decisions.

Finally, the First Circuit has staked out an almost unique position on the issue. Under its view, the *Colorado River* and *Cone* factors apply to actions filed under the Declaratory Judgment Act, but with certain modifications to reflect the influence of the Act's discretionary nature. *Cone*'s heavy weighting in favor of the exercise of federal jurisdiction is not applied, and the third *Colorado River* factor, utility of avoiding piecemeal litigation, is accorded much heavier weight in its place.[14] *See Fuller Co. v. Ramon I. Gil, Inc.*, 782 F.2d 306, 308–09 & n. 3 (1st Cir. 1986); *see also National Railroad Passenger Corp. v. Providence and Worcester Railroad Co.*, 798 F.2d 8, 11 (1st Cir.1986); *Liberty Mutual Insurance Co. v. Foremost–McKesson, Inc.*, 751 F.2d 475, 477 (1st Cir.1985). The emphasis on the danger of piecemeal litigation is justified, in this view, because:

> the third *Colorado River* factor—desirability of avoiding piecemeal litigation—subsumes such traditional considerations as "whether the declaratory judgment will serve the interests of the litigants or the public" and whether "considerations of efficiency, fairness and practical convenience for the court and parties warrant the court's granting a declaration of rights."

*Fuller Co.*, 782 F.2d at 309 n. 3.[15]

This court agrees with the First Circuit that *Colorado River*'s concern with "the virtually unflagging obligation of the fed-

eral courts to exercise the jurisdiction given them" is misplaced as far as actions under the Declaratory Judgment Act are concerned. As noted above, Congress never intended to compel district courts to hear all such actions brought before them.

However, this court is also skeptical of the assertion that the Court in *Colorado River* intended by the inclusion of its third factor to incorporate actions filed under 28 U.S.C.A. § 2201 into its holding. Nor does this court believe that the Supreme Court adopted a new interpretation of § 2201 in the *Colorado River* line of cases. Neither *Colorado River* nor *Cone* featured actions brought under the Declaratory Judgment Act. The action in *Colorado River* was for declaratory relief, but it was brought by the United States under 28 U.S.C.A. § 1345, and involved the independent equitable authority of the federal courts to apportion or declare disputed water rights, *see DiGregorio*, 811 F.2d at 1254 n. 4. The plaintiff in *Cone* sought an order compelling arbitration under the United States Arbitration Act, 9 U.S.C.A. § 4. In short, the statutory language of, and legislative intent behind, § 2201 had been clear and uncontroversial for over three decades when *Colorado River* and *Cone* were handed down. Certainly if the Court had a reexamination of *Brillhart* and its progeny in mind in those cases, more extensive analysis might be expected.

This position is supported by *Will v. Calvert Fire Insurance Co.*, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978). In *Will*, decided two years after *Colorado River*, each of the Justices, in three different blocs, appeared to assume that *Brillhart*'s holding retained vitality after *Colorado River*. Justice (now Chief Justice) Rehnquist and three others sought to apply that discretion beyond the confines of the De-

---

**14.** Several district courts have taken a similar approach by applying the *Colorado River/Cone* factors and appending an additional "factor" derived from the Declaratory Judgment Act's discretionary grant of authority. *E.g., City Federal Savings Bank v. Dominion Federal Savings and Loan Assoc.*, 657 F.Supp. 477 (S.D.Fla.1987); *Safeco Insurance Co. v. Miller*, 591 F.Supp. 590, 599 (D.Md.1984); *Heritage Land Co. v. Federal*

*Deposit Insurance Corp.*, 572 F.Supp. 1265 (W.D. Okla.1983).

**15.** In noting the desirability of avoiding piecemeal litigation as a factor in considering the propriety of dismissal, the Supreme Court cited *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1175. *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1247.

claratory Judgment Act to all instances of parallel state and federal litigation. 437 U.S. at 662–63, 98 S.Ct. at 2557. Justice Brennan and three others saw *Brillhart* as distinguishable from *Colorado River* on the grounds of two crucial factors: "state rather than federal law would govern the outcome of the federal suit [in *Brillhart,*] ... and more significantly, the federal suit was for a declaratory judgment." *Id.,* 437 U.S. at 671, 98 S.Ct. at 2562 (Brennan, J., joined by Burger, C.J., Marshall, and Powell, JJ., dissenting). Justice Blackmun's concurrence also establishes that he saw *Brillhart,* and presumably § 2201 actions, as distinguishable from the situation in *Colorado River. Id.,* 437 U.S. at 667, 98 S.Ct. at 2560 (Blackmun, J., concurring in the judgment).[16] The Court's later decision in *Cone* largely destroyed *Will's* precedential value, *see Cone,* 460 U.S. at 16–17, 103 S.Ct. at 937; Sonenshein, *Abstention: The Crooked Course of* Colorado River, 59 Tul.L.Rev. 651, 689–91 (1985), but did not cast any new light on declaratory judgment actions.

In sum, the importance of *Colorado River* lay in the fact that the Supreme Court there gave its imprimatur to a judicially formed rule of abstention based mainly on notions of judicial economy in an era of severely crowded federal dockets. This practice had been extremely controversial since its development in the Second Circuit some years earlier, *see* Ashman, Alfani & Shapiro, *Federal Abstention: New Perspectives on its Current Vitality,* 46 Miss. L.J. 629 (1975), because it posed the threat of self-abnegation over federal jurisdiction for inappropriate or "illicit" grounds. The Court was therefore wary in its approval of the practice, and imposed severe restrictions on it to bound the discretion of lower courts. Even condoning the practice to this extent subjected the Court to intense criticism from commentators. *E.g.,* Mulle-

nix, *A Branch Too Far: Pruning the Abstention Doctrine,* 75 Geo.L.J. 99 (1986).[17]

In comparison, a district court's discretion over declaratory judgment actions finds its origin in Congress, which has authority to design statutory relief as it sees fit within constitutional limitations and which has authority over the jurisdiction of lower federal courts. Thus, the concern over relaxation of jurisdictional constraints underpinning *Colorado River* and *Cone* is inapposite to actions under the Declaratory Judgment Act. Congress has already made the controlling decisions shaping the contours of such actions. For this reason, the court concludes that the "exceptional circumstances" test does not apply to § 2201 claims. This conclusion forestalls analysis of whether such circumstances exist in this case justifying dismissal in favor of the ongoing state proceeding.

## IV.

To summarize finally, this court finds that it has no jurisdiction to hear the subject matter of either USF & G's complaint or Algernon–Blair's cross-claim. Alternatively, the court concludes that the prudent decision in light of the facts in this case would in any event be to dismiss both complaint and cross-claim in regard for the ongoing litigation in Leon County Circuit Court, Florida.

An appropriate judgment will be entered.

---

**16.** The court notes that seven of the nine current members of the Supreme Court heard *Will* as well. In this vein, Justice (then Judge) Kennedy joined Judge Sneed's opinion for the Ninth Circuit panel in *DiGregorio,* ruling that the "exceptional circumstances" test should not be applied to actions under the Declaratory Judgment Act.

**17.** For the same reason, the Court's tightening of these restrictions in *Cone* met with widespread approval. *E.g.,* Koenig, *Federal Court Stays and Dismissals in Deference to Duplicate State Court Litigation: The Impact of Moses H. Cone Memorial Hospital v. Mercury Construction,* 46 Ohio St. L.J. 435 (1985); Sonenshein, *supra.*