**Rosalena WALLACE, etc., Plaintiff,**

v.

**CITY OF CHICAGO, et al., Defendants.**

**No. 92 C 7334.**

United States District Court,
N.D. Illinois, E.D.

Nov. 10, 1992.

Larry R. Rogers, Chicago, Ill., for plaintiff.

Patrick Rocks, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

City of Chicago ("City") has filed a Notice of Removal (the "Notice") of this action from the Circuit Court of Cook County, basing the removal on the presence in the Complaint (its Count III) of a claim that City and unidentified defendants described there as "Unknown Parties" violated the federal constitutional rights of decedent Derrick Hall ("Hall").[1] Based on its initial review of the Complaint and the Notice,[2]

---

1. This action has been brought by Rosalena Wallace ("Wallace") both as the Special Administrator of Hall's Estate and on behalf of Hall's heirs.

2. This Court always undertakes an immediate review of newly-filed complaints; see *Wisconsin Knife Works v. National Metal Crafters,* 781 F.2d 1280, 1282 (7th Cir.1986):

this Court sets an initial status hearing for 8:45 a.m. November 25, 1992 so that counsel for the parties may address the issues that are identified here.

Complaint Counts I and II advance state-law claims and may therefore be disregarded for purposes of this original analysis. If Count III were to survive in this District Court, Counts I and II would remain here under the supplemental jurisdiction conferred by 28 U.S.C. § 1367(a)[3] (for certainly they "are so related to [Count III] that they form part of the same case or controversy under Article III of the United States Constitution"). This opinion, then, will focus entirely on the Count III claim.

■ In that respect Count III ¶ 8 certainly invokes 42 U.S.C. §§ 1983 and 1985,[4] based on the asserted deprivation of Hall's constitutional rights by police officers employed by City (the "Unknown Parties" referred to in the Complaint). Of course Section 1985 is not implicated in this case at all, because nothing is suggested here that would come under the category of invidious class-based racial or comparable animus that marks the outer boundaries of that statute (see *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) and its progeny). But that elimination still leaves Section 1983 potentially in play.

On that score Count III ¶ 8 speaks only of denying Hall "equal protection of laws" in violation of the Fifth and Fourteenth Amendments.[5] That is certainly a peculiar way to characterize a fatal shooting (Count III ¶ 5) that amounted to excessive force (*id.* ¶¶ 6 and 7)—in constitutional terms, an "unlawful seizure" that would run afoul of the *Fourth* Amendment through its incorporation into the Fourteenth. But our Court of Appeals has recently reconfirmed (twice on the same day, as chance would have it) the proposition that legal theories are really not part of a pleading for purposes of testing its legal sufficiency, so that counsel's blunders in identifying the right claim (or counsel's omission to identify the nature of any claim at all) are not costly to the client (see *NAACP v. American Family Mut. Ins. Co.*, 978 F.2d 287, 292–93 (7th Cir.1992) and *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1137 (7th Cir. 1992)).

And so it is that the Complaint's reliance on Section 1983 (and City's reliance on the same provision in removing the action to this District Court) do not fall of their own weight, as is true of the reference to Section 1985. But that is only a temporary reprieve for Wallace, because she has said nothing in Count III that can save its Section 1983 claim in the face of *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). All that Wallace has set out against City is a pure respondeat superior claim, which cannot prevail under the law as defined in *Monell* and as applied in hundreds (or perhaps thousands) of cases since then.

■ What this action comes down to, then, is that Count III cannot stand against City under any circumstances. If City had simply moved in the Circuit Court for its dismissal instead of removing the case to

---

The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged.

Where a case comes here via removal from a state court rather than as an original federal court filing, both the complaint and the notice of removal require such threshold scrutiny.

3. All further references to Title 28 provisions will simply take the form "Section—."

4. Further references to Title 42's provisions will also take the form "Section—" because the only relevant provisions are Sections 1983 and 1985. Because the relevant numbering in Title 28 (whose provisions are also cited "Section—") is

quite different, however, no confusion should be caused by such dual usage.

5. It should scarcely be necessary to point out that the Fifth Amendment cannot conceivably have any application in these circumstances. It does not contain an equal protection clause to begin with. Even if it did, like the rest of the Bill of Rights it operates only against the federal government and not against the States. And to the extent that the Bill of Rights' guaranties are incorporated by reference through the Fourteenth Amendment, that Amendment has its own equal protection clause, thus rendering any notion of possible incorporation mere surplusage at best.

this federal court, the claim (like Hall) would have suffered instant death.[6]

In sum the Complaint contains no viable federal claim, a conclusion that could readily be implemented by the swift dismissal of Count III as failing to state a cause of action. And because that would leave remaining no claims within federal jurisdiction, an equally swift remand could be ordered if Section 1447(c) were to be read as it is written:

> If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

But *In re Shell Oil Co.*, 966 F.2d 1130, 1133 (7th Cir.1992) tells us [7] that the remand statute is to be read as if the word "lacks" really means "lacked," so that it focuses solely on the situation at the time of removal rather than "at any time before final judgment"—that is, so that the subject-matter-jurisdictional inquiry is to be frozen as of the removal date and is not to take any post-removal event into account.[8] And in that respect this Court has enough jurisdiction over a purported Section 1983 claim to decide that it should be trashed as groundless. That then would signal the

ensuing dismissal of Counts I and II under *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), rather than those claims being remanded to the Circuit Court under Section 1447(c).

So what it comes down to is that the City Corporation Counsel's Pavlovian response to the Complaint by filing a notice of removal rather than by filing an assuredly successful motion to dismiss Count III in the state court (1) has cost this Court at least the effort of this opinion, followed by a status hearing, and (2) has cost Wallace and her counsel some time in pursuing the lawsuit plus the payment of a second filing fee [9]—and all this at what profit to City? As stated at the outset, this action is set for a status hearing at 8:45 a.m. November 25, 1992 to discuss the future fate of this lawsuit and any other relevant issues posed by the Complaint or this opinion.

---

6. By contrast, Wallace's state-law claims based on notions of respondeat superior may well survive.

7. *Shell Oil* was presaged by a suggestion to the same effect in *In re Amoco Petroleum Additives Co.*, 964 F.2d 706, 708–09 (7th Cir.1992).

8. This Court's own search of the legislative history before *Shell Oil* came down had confirmed, as *Shell Oil* concluded, that nothing in the passage of the statute through Congress suggested that the Senators and Representatives had paid any attention to the difference in meaning so strongly suggested by the language's departure from the earlier version of Section 1447(c):

> If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case....

If all that were involved were a straightforward reading of the English language, that earlier version would plainly permit a snapshot *only* as of the date of removal, although the snapshot could be examined at any later date ("at any time before final judgment"). By sharp contrast, the current use of "lacks subject matter jurisdiction" reads as though it speaks in terms of a snapshot now, with the "now" meaning "at

any time before final judgment." And the fact that the "traditional view" has been "that jurisdiction present at the time a suit is filed or removed is unaffected by subsequent acts" (*Shell Oil*, 966 F.2d at 1133) does not, of course, mean that Congress—which defines jurisdiction—is not free to alter that "traditional view." But this of course is not the first time that a court has overridden what appears to be a more plausible reading of statutory language in favor of a reading that it views as more probably reflecting legislative intent—a subject on which Judge Easterbrook, who wrote *Shell Oil*, has just spoken once again in *Herrmann v. Cencom Cable Associates, Inc.*, 978 F.2d 978, 982–983 (7th Cir.1992). This Court is not about to enter onto the battleground that has been marked out by Justice Scalia in discouraging *all* reference to "legislative intent" because of what he perceives as the amorphous content of that concept—*Shell Oil* is binding here, and this Court accepts it.

9. Wallace suffers no permanent damage. Even if there were a potential statute of limitations problem here (and there is not, given the September 15, 1992 date of the fatal shooting), the problem would be averted by the saving provision of Ill.Rev.Stat. ch. 110, ¶ 13–217.