Alonzo FULLER, Sr., and Charles Fuller, Plaintiffs,

v.

EXXON CORPORATION, New PPC, Inc., Union Pacific Oil and Gas Company, and Latex Petroleum Corporation,[1] Defendants.

No. 99–0774–RV–S.

United States District Court,
S.D. Alabama,
Southern Division.

Dec. 9, 1999.

---

1. The complaint also names fourteen fictitious parties as defendants. While this practice is permitted by Alabama state procedural rules, *see* Ala.R.Civ.P. 9(h), fictitious party pleading is not generally recognized under the Federal Rules of Civil Procedure. *See, e.g.,* Fed. R.Civ.P. 10(a); 28 U.S.C. § 1441(a); *Rommell v. Automobile Racing Club of America, Inc.,* 964 F.2d 1090, 1098 n. 14 (11th Cir.1992). Accordingly, because the court concludes that removal was proper and that this case will proceed in federal court, those fictitious parties are **STRICKEN** from the caption and text of the complaint.

James David Mills, Mobile, AL, Wyman O. Gilmore, Jr., Grove Hill, AL, for Plaintiffs.

Alan C. Christian, Johnstone, Adams, Bailey, Gordon & Harris, Mobile, AL, W. Alexander Mosely, Hand Arendall, L.L.C., Mobile, AL, John F. Tyra, Hamilton, AL, for Defendants.

### MEMORANDUM OPINION AND ORDER

VOLLMER, District Judge.

This matter comes before the court on a motion by plaintiffs Alonzo Fuller, Sr., and Charles Fuller to remand this action to the Circuit Court of Clarke County, Alabama. The court heard oral argument on this matter on December 9, 1999. After carefully reviewing the law and considering the arguments of the parties,[2] the court concludes that the motion will be denied.

---

**2.** The court has considered the parties' oral arguments, the "Notice of Removal" (Doc. 1); the "Motion to Remand" (Doc. 12); the

## I. BACKGROUND

The Fullers originally filed this putative class action in Clarke County Circuit Court on July 22, 1999. They assert that in 1949, the Williams Family leased forty-six acres of land in Clarke County, Alabama, to the Humble Oil & Refining Company ("Humble"). Under the terms of that lease, Humble was allegedly permitted to recover oil, gas and minerals from the property in exchange for royalties representing a certain percentage of the sale proceeds of all deposits removed from the property. Shortly thereafter, defendant Exxon Corporation ("Exxon") merged with Humble and assumed Humble's duties and obligations under the lease. Then, over the next several years, various portions of the lease were assigned to defendants New PPC, Inc. ("PPC"), Union Pacific Oil And Gas Company ("Union Pacific"),[3] and Latex Petroleum Corporation ("Latex Petroleum").

The complaint alleges that these defendants wrongfully reduced the recognized surface area associated with the lease, such that the lessors were paid royalties for only fifteen acres of land, despite the fact that the defendants continued to remove deposits from the entire forty-six acres. The Fullers bring the complaint on behalf of themselves, as lawful heirs of the Williams Family, and "all persons or entities" who are current or former lessors under the lease, as well as the successors, assigns or lawful heirs of those lessors. The complaint seeks declaratory and injunctive relief, equitable accounting, an unspecified amount of compensatory and punitive damages, the establishment of a constructive trust, and attorneys' fees.

Exxon removed this action on August 25, 1999. Although Union Pacific and Latex Petroleum filed joinders in the notice of removal, PPC did not. Exxon acknowledged that PPC had not joined in the removal, but it explained that this was due to the fact that PPC had not yet been served with process. Apparently unbeknownst to Exxon, however, PPC was served on August 24, 1999—the day before Exxon filed its notice of removal.[4] PPC has not since joined or otherwise consented to the removal.

In the notice of removal, Exxon invoked 28 U.S.C. § 1332, asserting complete diversity of citizenship and an amount in controversy greater than $75,000. Exxon acknowledged that the Fullers' complaint seeks unspecified compensatory and punitive damages, but it argued that the claims of all putative class members for punitive damages satisfied the federal jurisdictional minimum when considered in the aggregate. In support of its amount-in-controversy argument, Exxon submitted an affidavit from its attorney, Alan Christian, who stated:

> As local counsel for Exxon, it appears in good faith that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. I have practiced law in Mobile, Alabama[,] for over nineteen years and am familiar with verdicts against oil companies in cases where facts are proved such as those which are alleged in this case. Exxon denies the operative facts alleged by Plaintiffs and the purported class; but, it is my opin-

---

"Brief in Support of Motion to Remand" (Doc. 13); Union Pacific Oil and Gas Company's "Brief in Opposition to Motion to Remand" (Doc. 14); the "Brief of Defendant, Exxon Corporation, in Opposition to Plaintiffs' Motion to Remand" (Doc. 15); and the "Affidavit in Support of Plaintiff's [sic] Motion for Remand" (Doc. 16).

**3.** The complaint identifies Union Pacific as "Union Pacific Oil And Gas Company, Inc." In its answer, however, Union Pacific states that its correct name is "Union Pacific Oil

and Gas Company." *See* Union Pacific's Answer ¶ 1. The court therefore **AMENDS** the complaint *sua sponte* to reflect this change. Any party opposing this amendment must file an objection setting forth the specific grounds therefor within eleven days of the date of this memorandum opinion and order. The court **CAUTIONS** the parties that the failure to do so shall constitute a waiver of any such objection.

**4.** *See* "Service Notice" (Doc. 19).

ion that it would be more likely than not that a judgment in excess of $75,000.00, in aggregated punitive damages, exclusive of interest and costs, would be entered in this case, if Plaintiffs and the purported class prove those facts which Exxon denies.

Christian Aff. ¶ 3.

On October 18, 1999, the Fullers filed a motion to remand. Rather than raise the obvious argument that Exxon's removal was procedurally defective due to PPC's failure to join in the removal, the Fullers instead argued that this court lacks subject matter jurisdiction because the value of each plaintiff's and putative class member's claim is less than $75,000. To buttress this assertion, plaintiffs' counsel filed his own affidavit stating that, based upon his research, no single plaintiff or potential class member had a compensatory damages claim for an amount greater than $75,000. He also expressly waived, on behalf of the Fullers and the putative class, any claim to punitive damages:

> notwithstanding allegations contained in Plaintiffs' complaint to the contrary, Plaintiffs and class members in the class seeking certification in association with this action waive any claim for punitive damages, and those claimants wishing to pursue punitive damages or damages in an amount greater than $75,000.00 may elect not to become a class member of the class this action seeks to certify.

Mills Aff. ¶ 9. Noting that Exxon's sole amount-in-controversy argument relied upon the complaint's original request for punitive damages, the Fullers asserted that their post-removal disclaimer of any such damages demonstrates that this court lacks subject matter jurisdiction over this action.

Exxon and Union Pacific filed separate briefs opposing remand. Union Pacific conceded that the punitive damage waiver, if valid, "may demonstrate that federal jurisdiction does not exist." However, both Union Pacific and Exxon argued that the disclaimer is neither binding nor effective because it amounts to a breach of the Fullers' fiduciary duty as class representatives. Alternatively, Union Pacific urged the court to hold, in the event the case is remanded, that the waiver is binding on every putative class member in the state court proceeding.

## II. DISCUSSION

Removal of a civil case from state to federal court is proper only if the case could have originally been brought in federal court. See 28 U.S.C. § 1441(a). Exxon asserts that removal was proper here because this case could have originally been filed in this court pursuant to 28 U.S.C. § 1332. Section 1332 grants federal subject matter jurisdiction over actions between citizens of different states in which the amount in controversy is greater than $75,000. Before addressing this jurisdictional question, however, the court must first resolve the procedural issue of whether this case must be remanded due to PPC's failure to join in the removal.

■■■ While none of the parties have raised this procedural defect, the court addresses the issue *sua sponte* because it has a duty to remand any case that was improvidently removed from state court. See *Paz v. Bonita Tomato Growers, Inc.*, 920 F.Supp. 174, 175 (M.D.Fla.1996); *East v. Long*, 785 F.Supp. 941, 944–45 (N.D.Ala. 1992). See also *University of S. Ala. v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir.1999) (removal statutes must be strictly construed in favor of remand). In analyzing this issue, the court notes that significant federalism concerns are raised whenever a case is removed from state to federal court, see *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941), and that the removing defendant therefore bears the burden of establishing that removal was proper. See *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir.1996). Accordingly, unresolved doubts concerning the propriety of the removal must be resolved by remanding the action to state court. See *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994).

The proper procedure for removing a case from state to federal court is set forth at 28 U.S.C. § 1446. Under that statute, a defendant seeking to remove a civil case must file a notice of removal containing a short and plain statement of the grounds for removal, along with a copy of all process, pleadings and orders served upon the defendant, in the federal district court for the district and division within which the action is pending. *See* 28 U.S.C. § 1446(a). · The defendant must do so within thirty days of the receipt of the complaint,[5] or within thirty days after service of the summons if the complaint has already been filed in state court and need not be served on the defendant, whichever period is shorter. *See* 28 U.S.C. § 1446(b).

■ While not expressly stated in section 1446, it is well-established that all defendants in a multi-defendant case must join in the removal.[6] *See Chicago, R.I. & P. Ry. Co. v. Martin,* 178 U.S. 245, 247–48, 20 S.Ct. 854, 855, 44 L.Ed. 1055 (1900); *Tri–Cities Newspapers, Inc. v. Tri–Cities Printing Pressmen & Assistants' Local 349,* 427 F.2d 325, 326–27 (5th Cir.1970);[7] *In re Federal Savings and Loan Ins. Corp.,* 837 F.2d 432, 434 n. 2 (11th Cir. 1988). The failure of any defendant to join in the removal within thirty days after the case became removable as required by sections 1446(a) and (b) constitutes a defect in the removal process. *See In re Ocean Marine Mut. Protection and Indem. Assoc., Ltd.,* 3 F.3d 353, 355–56 (11th Cir. 1993).

■ A party seeking remand based on a procedural defect has thirty days "after the filing of the notice of removal under section 1446(a)" within which to file a remand motion. *See* 28 U.S.C. § 1447(c). However, the mere fact that a party has failed to file such a motion does not preclude remand. Federal district courts have the authority to remand an action *sua sponte* due to procedural defects in the removal process. *See Mize v. Amercraft Corp.,* 874 F.Supp. 356, 359 (M.D.Ala. 1994). Accordingly, a court may remand a case *sua sponte* if every defendant has not properly joined in the removal. *See Miles v. Kilgore,* 928 F.Supp. 1071 (N.D.Ala. 1996).

Here, PPC did not join in the removal. Exxon contends that this is because PPC had not yet been served a copy of the summons or the complaint. While it is true that a defendant need not join in a removal where it has not been served with process at the time the case is removed, *see, e.g., Katz v. Costa Armatori S.p.A.,* 718 F.Supp. 1508, 1509 n. 1 (S.D.Fla. 1989),[8] service was effectuated on PPC the day before Exxon filed its notice of removal. Thus, the court could remand this

5. Although the plain language of the statute states that the thirty-day window for removal begins to run upon receipt of the complaint "through service *or otherwise,*" 28 U.S.C. § 1446(b) (emphasis added), the Supreme Court recently held that this time period does not actually start until there is formal service of process. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999) (30–day removal period began running on date defendant was formally served by certified mail, rather than on earlier date that defendant received faxed, file-stamped copy of complaint).

6. There are several exceptions to this rule. A defendant need not join in the removal if: (1) it is a nominal party or formal party defendant, *see Farias v. Bexar County Bd. of Trustees for Mental Health Retardation Services,* 925 F.2d 866, 871 (5th Cir.1991); *Miles v.* *Kilgore,* 928 F.Supp. 1071, 1075 (N.D.Ala. 1996); (2) it had not yet been served with process at the time of removal, *see Pullman Co. v. Jenkins,* 305 U.S. 534, 540–41, 59 S.Ct. 347, 350, 83 L.Ed. 334 (1939); or (3) the removed claim is a separate and independent claim under 28 U.S.C. § 1441(c), *see In re City of Mobile,* 75 F.3d 605, 608 (11th Cir. 1996). None of these exceptions, however, are implicated in this case.

7. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions issued by the former Fifth Circuit prior to October 1, 1981.

8. Defendants who had not been served at the time of removal must join the removal within thirty days after service of the complaint. *See*

action *sua sponte* pursuant to section 1447(c) because PPC's failure to join constitutes a procedural defect in the removal process.

■■■■ Nevertheless, even though this procedural defect provides a proper basis for a *sua sponte* remand, the court concludes that the statutory time frame for doing so has passed. In *In re Bethesda Memorial Hospital, Inc.,* 123 F.3d 1407, 1410–11 (11th Cir.1997), a divided panel of the Eleventh Circuit held that the thirty-day time limit imposed by section 1447(c) for filing a "motion to remand" based upon a procedural defect applies not only to the parties but also to a district court's *sua sponte* remand. Therefore, because Exxon filed its notice of removal more than thirty days ago, the court has no option but to hold that it cannot remand this action based purely on a procedural defect.

However, this conclusion as to the purely procedural aspects of Exxon's removal does not insulate this case from remand if PPC's failure to join in the removal raises indeterminable questions concerning the court's jurisdiction. Because federal courts are courts of limited jurisdiction, *see Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994), they must determine that they have subject matter jurisdiction over every case before proceeding to the

merits of the case. *See Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). Thus, where, as here, a party invokes diversity jurisdiction under 28 U.S.C. § 1332, the court must ensure that no defendant is a citizen of the same state as any plaintiff before proceeding to the merits of the case.[9] *See United States Fidelity and Guar. Co. v. Algernon–Blair Inc.,* 705 F.Supp. 1507, 1510 (M.D.Ala. 1988). Any unresolved uncertainties concerning the court's jurisdiction necessitate remand. *See American Tobacco Co.,* 168 F.3d at 411.

In other words, while it is clear from the face of the pleadings that complete diversity of citizenship exists between the Fullers and the three removing defendants,[10] remand would be appropriate if the court were unable to determine that the Fullers were also diverse from PPC, the sole non-removing defendant. The court is satisfied, however, that this concern is not raised here because Exxon has stated in its notice of removal that PPC is incorporated in Delaware and that its principal place of business is not in Mississippi, the Fullers' state of residence.[11] Although PPC itself has not made such a statement, Exxon's notice of removal, which "is specific and ... signed by a lawyer, deserves deference and a presumption of truth."[12] *Burns,* 31 F.3d at 1095. *See also Wilson*

*Jasper v. Wal–Mart Stores, Inc.,* 732 F.Supp. 104, 105 (M.D.Fla.1990).

9. Diversity of citizenship in a putative class action is determined by the citizenship of the class representatives rather than the citizenship of the class members. *See Snyder v. Harris,* 394 U.S. 332, 340, 89 S.Ct. 1053, 1059, 22 L.Ed.2d 319 (1969).

10. The Fullers are both citizens of Mississippi. *See* Compl. ¶ 1. Exxon is a New Jersey corporation with its principal place of business in Texas. *See* Exxon's Answer, Second Defense ¶ 2. Union Pacific is a Delaware corporation with its principle place of business in Texas. *See* Union Pacific's Answer, Sixth Defense ¶ 4. Latex Corporation is an Oklahoma corporation with its principle place of business in Oklahoma. *See* Latex Petroleum's Answer, First Defense ¶ 6.

11. *See* Notice of Removal ¶ 3. In the same paragraph, Exxon further states that PPC's principal place of business is not in Alabama, which would otherwise preclude removal. *See* 28 U.S.C. § 1441(b) ("Any [diversity] action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.").

12. Rule 11(b) of the Federal Rules of Civil Procedure states that when an attorney presents to the court a signed pleading, written motion or other paper, the attorney "is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances ... the allegations and other factual contentions have evidentiary support."

*v. Republic Iron & Steel Co.*, 257 U.S. 92, 97–98, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921) (federal courts must accept as true all unopposed statements contained within a removal petition). The reason for this presumption is that a lawyer is an officer of the court who has a duty of candor to the tribunal. *See Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1546 (11th Cir. 1993). The court thus holds that Exxon's submission, which is signed by counsel, is sufficient to establish that the Fullers and PPC are citizens of different states and that PPC's failure to join in the removal does not necessitate remand due to a lack of diversity of citizenship.

Having concluded that this action may not be remanded even though the removal was procedurally defective, and having further concluded that this procedural defect does not preclude a jurisdictional determination that there is complete diversity of citizenship between the parties as required by 28 U.S.C. § 1332, the court turns to address the remaining jurisdictional prerequisite for federal diversity jurisdiction: whether the amount in controversy exceeds $75,000. As noted above, the Fullers seek unspecified compensatory and punitive damages on behalf of themselves and the putative class. Exxon argues that the punitive damages—once aggregated— are sufficient to confer subject matter jurisdiction. The Fullers counter that this court does not have jurisdiction in light of their attorney's post-removal affidavit, which clarifies that no plaintiff or putative class member has a compensatory damage claim for an amount greater than $75,000, and which waives all claims to punitive damages.

■ In *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), the Supreme Court made clear that subject matter jurisdiction must be determined at the time of removal. Thus, once jurisdiction attaches, a plaintiff cannot divest a federal court of jurisdiction by later decreasing his claim for damages below the jurisdiction minimum. *See Williams v. Employers Mut. Liab. Ins. Co.*, 131 F.2d 601, 602 (5th Cir.1942). However, where it is not readily apparent from the face of the complaint that the amount in controversy exceeds the jurisdictional minimum at the time of removal, federal courts may examine affidavits and other evidence to help determine that amount in controversy. *See De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir.1993).

■ In this case, for example, it is not facially apparent that the actual injuries sought by each plaintiff and putative class member are worth more than $75,000.[13] Although the complaint contends that the defendants engaged in a practice of "underpayment," it does not give any indication as to the amount of royalties that were underpaid. Thus, while it is possible that each claim for compensatory damages exceeds $75,000, it is equally possible that the claims are insufficient to grant federal jurisdiction. That being the case, the court may properly consider the affidavit submitted by the Fullers' counsel in determining the amount in controversy. *See id.* Given that the affidavit clarifies that no plaintiff or putative class member has a compensatory damages claim for an amount greater than $75,000,[14] and that the defendants do not dispute this assertion, the court concludes that the amount of the Fullers' claims for compensatory damages was not sufficient to confer subject matter jurisdiction over this case at the time of removal.

■ As for the Fullers' request for unspecified punitive damages, the court notes that when determining the amount in controversy, punitive damages must be

---

**13.** To sustain subject matter jurisdiction based on diversity of citizenship in a putative class action, the value of every class member's claim must exceed $75,000. *See Zahn v. International Paper Co.*, 414 U.S. 291, 301, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (1973).

**14.** Specifically, the affidavit states that the single largest claim for compensatory damages is $60,084.00. *See* Mills Aff. ¶ 4b.

considered "unless it is apparent that such cannot be recovered." *Holley Equip. Co. v. Credit Alliance Corp.,* 821 F.2d 1531, 1535 (11th Cir.1987). Here, the Fullers seek punitive damages on behalf of themselves and the putative class for recklessness, wantonness, breach of fiduciary duty and fraud. Alabama law permits an award of punitive damages under each of these theories. *See, e.g., Kmart v. Peak,* No. 1971282, 1999 WL 756037, at *7 (Ala. Sept. 24, 1999) (recklessness/wantonness); *Fulton v. Callahan,* 621 So.2d 1235, 1238 (Ala. 1993) (breach of fiduciary duty); *Mobile Dodge, Inc. v. Alford,* 487 So.2d 866, 871 (Ala.1986) (fraud). The court may therefore consider these punitive damages claims in ascertaining whether the amount in controversy exceeded $75,000.

■ According to the Fullers, however, their post-removal waiver of all punitive damages makes such an analysis unnecessary. Exxon and Union Pacific disagree. They both argue that the waiver is neither binding nor effective because it would breach the Fullers' fiduciary duty as class representatives. While the court appreciates the defendants' concern for the financial well-being of the putative plaintiff class members, it rejects their argument that a punitive damages waiver by a putative class representative may not be considered when determining the amount in

controversy. As this court recently explained in *Kline v. Avis Rent A Car System, Inc.,* 66 F.Supp.2d 1237, 1239 (S.D.Ala.1999), it may be true that a class representative cannot validly waive claims on behalf of absent class members. However, such a question "applies solely to the issue of whether the class should be certified, and that issue does not arise until after the court determines it has subject matter jurisdiction." *Id.* Therefore, although the Fullers' waiver may ultimately preclude class certification,[15] it may nonetheless be considered in determining whether the amount in controversy exceeds $75,000.

■ The court notes, however, that there is a significant jurisdictional difference between a post-removal clarification and a post-removal waiver. While the former may be considered if the amount in controversy is not apparent on the face of the complaint at the time of removal, the latter cannot be used to amend a complaint and thereby destroy federal jurisdiction that has already attached. *See St. Paul,* 303 U.S. at 292, 58 S.Ct. at 592 (post-removal reduction of amount in controversy, whether "by stipulation, *by affidavit,* or by amendment of [the] pleadings ... does not deprive the district court of jurisdiction") (emphasis added).[16] Thus, as long as subject matter jurisdiction attached at

---

15. *See, e.g., Arch v. American Tobacco Co.,* 175 F.R.D. 469, 480 (E.D.Pa.1997) ("named plaintiffs who would intentionally waive or abandon potential claims of absentee plaintiffs have interests antagonistic to those of the class").

16. Two federal district courts have recently held that the 1988 amendment to 28 U.S.C. § 1447(c) overruled *St. Paul*'s holding that a plaintiff cannot defeat subject matter jurisdiction by reducing his demand for damages following removal. *See Goodman v. Wal–Mart Stores, Inc.,* 981 F.Supp. 1083 (M.D.Tenn.1997) (remanding case to state court for lack of subject matter jurisdiction after permitting post-removal reduction of ad damnum clause); *Bailey v. Wal–Mart Stores, Inc.,* 981 F.Supp. 1415 (N.D.Ala.1997) (same). Under the amendment, a case may only be remanded on the basis of a procedural defect if a remand motion identifying the defect is

filed within thirty days after removal. However, the case must be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." According to the *Goodman* and *Bailey* courts, this means that a court must remand a properly-removed action whenever it appears that the amount in controversy no longer exceeds $75,000—even when the plaintiff reduces his damages claim on the eve of trial, *see Bailey,* 981 F.Supp. at 1417, or does so solely to destroy federal jurisdiction, *see Goodman,* 981 F.Supp. at 1085.

While this interpretation is certainly plausible, the Seventh Circuit has declined to adopt such an approach:

Does the reference to "any time before final judgment" mean that changes after removal can eliminate jurisdiction and require remand? We think not. The distinction between 30 days to raise procedural shortcomings and "any time" for jurisdictional

the time of Exxon's removal, the Fullers cannot later absolve that jurisdiction by having their attorney waive their claims for punitive damages.

The question, then, is whether the amount in controversy was sufficient to confer subject matter jurisdiction at the time of removal. According to Exxon, the answer is yes—the Fullers' demand for punitive damages on behalf of the purported class exceeds $75,000 when the claims of all putative class members are considered in the aggregate. As a general rule, the claims of multiple plaintiffs may not be aggregated to satisfy the amount-in-controversy requirement. *See Zahn v. Inter-*

*national Paper Co.,* 414 U.S. 291, 301, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (1973). However, aggregation is appropriate where "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Snyder v. Harris,* 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319 (1969). Indicating that "[r]emedies for the benefit of the group" are considered a "common interest" under *Snyder,* the Eleventh Circuit has held that where "punitive damages reflect the defendant's course of conduct towards all of the putative class members, it is entirely proper that the damages be considered in the aggregate." *Tapscott,* 77 F.3d at 1358–59.[17]

ones does no more than direct courts to remain vigilant to ensure the presence of jurisdiction even though the parties may disregard the subject (or, worse, try to sneak one by the judge). Neither the text of the revised § 1447(c) nor its legislative history implies that Congress altered the traditional view, expressed in *St. Paul* and, *e.g., Freeport–McMoRan, Inc. v. K N Energy, Inc.,* 498 U.S. 426, [428,] 111 S.Ct. 858, 860, 112 L.Ed.2d 951 (1991), that jurisdiction present at the time a suit is filed or removed is unaffected by subsequent acts, subject to the limited statutory exception discussed in *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989).
*In re Shell Oil Co.,* 966 F.2d 1130, 1133 (7th Cir.1992) (Easterbrook, J.).
  Other courts have similarly held that section 1447(c), as amended, does not permit a plaintiff to destroy diversity jurisdiction by reducing his claim for damages. *See Doddy v. Oxy USA, Inc.,* 101 F.3d 448, 456 n. 4 (5th Cir.1996) (" § 1447 cannot be read to overrule the repeatedly expressed view that changes after removal cannot eliminate jurisdiction and require remand"); *Baldridge v. Kentucky–Ohio Transp., Inc.,* 983 F.2d 1341, 1348 n. 11 (6th Cir.1993) ("The legislative history of the Judicial Improvements Act (Pub.L.100–702), the 1988 law which changed [section 1447(c) ], reveals no intent to direct district courts to look beyond the time of removal in deciding remand motions based on lack of jurisdiction."); *Wallace v. City of Chicago,* 807 F.Supp. 82, 84 n. 8 (N.D.Ill. 1992) ("nothing in the [1988 amendment] suggested that the Senators and Representatives had paid any attention to the difference in meaning so strongly suggested by the language's departure from the earlier version of Section 1447(c)"); *Garrett v. Blanton,* Civ. A.

Nos. 89–4367, 90–0323, 1993 WL 315476, at *4 (E.D.La. Aug. 10, 1993) ("The legislative history [of the 1988 amendment] does not mention any intention to overrule *St. Paul Mercury.* It appears that the two components of Section 1447, remand for removal defects and remand for lack of subject matter jurisdiction, were simply clarified and not substantively altered as a result of the amendment.") (internal quotations omitted).
  This court agrees that the 1988 amendment to section 1447(c) did not overrule *St. Paul's* holding that a plaintiff cannot divest a federal court of subject matter jurisdiction by reducing his demand for damages after removal. As the above-cited courts have explained, there is simply nothing in the text or legislative history of the amendment to suggest that Congress intended to overrule this long-standing interpretation of section 1447(c). Accordingly, this court declines to follow *Goodman* and *Bailey* and instead holds that a plaintiff may not destroy federal jurisdiction by reducing his claim for damages below the jurisdictional threshold following a proper removal.

**17.** The *Tapscott* Court emphasized, however, that its holding does not "establish a bright line rule that any class claims for punitive damages may be aggregated to meet the amount-in-controversy requirement." 77 F.3d at 1359. As the Court explained, "there may be cases where the punitive damages, albeit within a class action, would be determined on an individualized consideration of the egregiousness of the harm done to individual class members. In such a case, aggregation of punitive damages may very well be inappropriate." *Id.* at 1359 n. 13. Here, the Fullers do not argue that aggregation is unwarranted, nor do they suggest that the defendants' behavior was more egregious towards

 In addition, the *Tapscott* Court held that where, as here, a plaintiff seeks an unspecified amount of damages, the removing defendant need only show by a preponderance of the evidence that the amount in controversy is greater than $75,000. *See id.* at 1357. As the Court explained, this relatively low burden of proof [18] "is warranted because there is simply no estimate of damages to which a court may defer." *Id.* at 1356–57. Thus, to preclude remand, Exxon need only show that it is "more likely than not" that the putative class members' aggregated claims for punitive damages "exceeds the $[75],-000 jurisdictional requirement." *Id.* at 1357.

To meet this burden, Exxon has submitted an affidavit from its attorney, Alan Christian, who states that he has practiced law for over nineteen years and is familiar with verdicts against oil companies in factually similar cases. In his opinion, "it would be *more likely than not* that a judgment in excess of $75,000.00, in aggregated punitive damages, exclusive of interests and costs, would be entered in this case, if Plaintiffs and the purported class prove those facts which Exxon denies." [19]

Given that the Fullers have offered no evidence to the contrary, the court concludes that Mr. Christian's affidavit demonstrates by a preponderance of the evidence that the amount in controversy at the time of removal was greater than $75,-000. *See Tapscott,* 77 F.3d at 1357 ("where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a *preponderance of the evidence* that the amount in controversy *more likely than not* exceeds the $[75],000 jurisdictional requirement") (emphasis added). Removal was therefore proper.

---

certain putative class members then to others. The court therefore concludes that it is proper to aggregate the punitive damages requested on behalf of the putative class in this case in determining the amount in controversy.

18. In *Burns,* the Eleventh Circuit held that where the complaint expressly seeks less than

## III. CONCLUSION

For the foregoing reasons, the court concludes that it has subject matter jurisdiction over this removed action because there is complete diversity of citizenship between the parties and the amount in controversy was greater than $75,000 at the time of removal. The motion to remand is therefore **DENIED.**

---

the federal jurisdictional minimum in state court, the removing defendant must prove to a "legal certainty" that the amount in controversy is actually greater than $75,000. 31 F.3d at 1095.

19. Christian Aff. ¶ 3 (emphasis added).