Alonzo FULLER, Sr., and Charles Fuller, Plaintiffs,

v.

EXXON CORPORATION, New PPC, Inc., Union Pacific Oil and Gas Company, and Latex Petroleum Corporation, Defendants.

Civil Action No. 99–0774–RV–S.

United States District Court, S.D. Alabama, Southern Division.

Jan. 12, 2001.

Wyman O Gilmore, Jr., Grove Hill, AL, James David Mills, Birmingham, AL, for Alonzo Fuller, Sr., Charles Fuller.

Alan C. Christian, Johnstone, Adams, Bailey, Gordon & Harris, Mobile, AL, for Exxon Corp.

W. Alexander Moseley, Hand Arendall, L.L.C., Mobile, AL, for Union Pacific Oil and Gas.

John F. Tyra, Watson, Degraffenried, Hardin & Tyra, LLP, Tuscaloosa, AL, for Latex Petroleum Corp.

## MEMORANDUM OPINION AND ORDER

VOLLMER, Senior District Judge.

■ This matter comes before the court on the question of whether the court properly concluded that it had subject matter jurisdiction over this case at the time of removal. The court has raised this issue *sua sponte* because the Eleventh Circuit has emphasized that a "federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." *Fitzgerald v. Seaboard System R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir.1985).

### I. BACKGROUND

The plaintiffs originally filed this putative class action in Clarke County Circuit Court on July 22, 1999. They assert that in 1949, the Williams Family leased forty-six acres of land in Clarke County, Alabama, to the Humble Oil & Refining Company ("Humble"). Under the terms of that lease, Humble was allegedly permitted to recover oil, gas and minerals from the property in exchange for royalties representing a certain percentage of the sale proceeds of all deposits removed from the property. Shortly thereafter, defendant Exxon Corporation ("Exxon") merged with Humble and assumed Humble's duties and obligations under the lease. Then, over the next several years, various portions of the lease were assigned to defendants New PPC, Inc. ("PPC"), Union Pacific Oil And Gas Company ("Union Pacific"), and Latex Petroleum Corporation ("Latex Petroleum").

The complaint alleges that these defendants wrongfully reduced the recognized surface area associated with the lease, such that the lessors were paid royalties for only fifteen acres of land, despite the fact that the defendants continued to remove deposits from the entire forty-six acres. The Fullers bring the complaint on behalf of themselves, as lawful heirs of the Williams Family, and "all persons or entities" who are current or former lessors under the lease, as well as the successors, assigns or lawful heirs of those lessors. The complaint seeks declaratory and injunctive relief, equitable accounting, an

unspecified amount of compensatory and punitive damages, the establishment of a constructive trust, and attorneys' fees.

Exxon removed this action on August 25, 1999, invoking 28 U.S.C. § 1332, asserting complete diversity of citizenship and an amount in controversy greater than $75,000. Exxon acknowledged that the plaintiff's complaint seeks unspecified compensatory and punitive damages, but it argued that the claims of all putative class members for punitive damages satisfied the federal jurisdictional minimum when considered in the aggregate. In support of its amount-in-controversy argument, Exxon submitted an affidavit from its attorney, Alan Christian, who stated:

> As local counsel for Exxon, it appears in good faith that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. I have practiced law in Mobile, Alabama[,] for over nineteen years and am familiar with verdicts against oil companies in cases where facts are proved such as those which are alleged in this case. Exxon denies the operative facts alleged by Plaintiffs and the purported class; but, it is my opinion that it would·be more likely than not that a judgment in excess of $75,000.00, in aggregated punitive damages, exclusive of interest and costs, would be entered in this case, if Plaintiffs and the purported class prove those facts which Exxon denies.

Christian Aff. ¶ 3.

■ On October 18, 1999, the Fullers filed a motion to remand, arguing that this court lacks subject matter jurisdiction because the value of each plaintiff's and putative class member's claim is less than $75,000. To buttress this assertion, plaintiffs' counsel filed his own affidavit stating that, based upon his research, no single plaintiff or potential class member had a compensatory damages claim for an amount greater than $75,000. He also expressly waived, on behalf of the Fullers and the putative class, any claim to punitive damages:

> notwithstanding allegations contained in Plaintiffs' complaint to the contrary, Plaintiffs and class members in the class seeking certification in association with this action waive any claim for punitive damages, and those claimants wishing to pursue punitive damages or damages in an amount greater than $75,000.00 may elect not to become a class member of the class this action seeks to certify.

Mills Aff. ¶ 9. Noting that Exxon's sole amount-in-controversy argument relied upon the complaint's original request for punitive damages, the Fullers asserted that their post-removal disclaimer of any such damages demonstrates that this court lacks subject matter jurisdiction over this action. In finding removal proper, this court held that while the plaintiffs' post-removal waiver of punitive damages might preclude class certification, it would not defeat jurisdiction, as the question of the sufficiency of the amount in controversy must be determined at the time of removal.[1]

In that same opinion, this court held that although "the amount of the Fullers' claim for compensatory damages was not sufficient to confer subject matter jurisdiction over this case at the time of removal," the amount in controversy requirement was nonetheless satisfied because the defendant, Exxon Corporation had demonstrated by a preponderance of the evidence through an affidavit that the "putative class members' aggregated claims for punitive damages 'exceeds the $[75],000 jurisdictional requirement.'" *Fuller v. Exxon Corp.*, 78 F.Supp.2d 1289, 1295–98 (S.D.Ala.1999)(quoting and relying upon

---

1. See *Fuller v. Exxon Corp.*, 78 F.Supp.2d at 1297 ("In *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), the Supreme Court made clear that subject matter jurisdiction must be determined at the time of removal. Thus, once jurisdiction attaches, a plaintiff cannot divest a federal court of jurisdiction by later decreasing his claim for damages below the jurisdiction minimum. See *Williams v. Employers Mut. Liab. Ins. Co.*, 131 F.2d 601, 602 (5th Cir.1942).")

*Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir.1996)).

■ However, just a short time thereafter, in *Cohen v. Office Depot, Inc.*, the Eleventh Circuit concluded "that *Tapscott*'s holding about aggregation of punitive damages is inconsistent with the earlier holding on the same legal issue in *Lindsey* [*v. Alabama Telephone Co.*, 576 F.2d 593 (5th Cir.1978) ]." 204 F.3d 1069 (11th Cir.2000). The Eleventh Circuit explained in *Cohen* that,

> *Lindsey*, inescapably stands for the proposition that a federal court cannot exercise diversity jurisdiction over a class action—even with completely diverse parties—solely because the total punitive damages claim on behalf of the entire class exceeds the jurisdictional amount in controversy. Instead, under *Lindsey*, the punitive damages claim for the class must be assigned on a pro rata basis to each class member for amount in controversy purposes.

*Id.* at 1074. Because the Eleventh Circuit is bound by decisions of the former Fifth Circuit,[2] and is obligated to follow the oldest panel decision when two panels conflict,[3] the Court vacated its holding in *Tapscott* regarding the issue of aggregating punitive damages, stating that "we mistakenly considered the matter as one of first impression." *See Cohen*, 204 F.3d at 1074.

Given the holding in *Cohen*, this court ordered (Doc. 41) that the defendant file a memorandum of law discussing whether the court properly determined that the amount in controversy had been satisfied in light of the then recent holding in *Cohen*. The defendant then filed a brief (Doc. 42) in which it sought to establish that despite the disallowance of punitive damage aggregation by *Lindsey*, the jurisdictional minimum of $75,000 could still be met,[4] even when assigned to each putative class member on a pro rata basis. As support for this contention, the plaintiff offered two examples[5] of cases where punitive damage awards amounted to $4.6 million and $7.5 million respectively, which when divided among the putative class members on a pro rata basis, exceeded the jurisdictional minimum of $75,000 per member. The plaintiffs filed a response (Doc. 43) to the defendant's brief, refuting the probability (or even possibility) that a sufficiently sizable punitive damage verdict could be recovered in this case. The plaintiffs also provided two affidavits (Docs.43, 44) in support of their position on the issue of possible punitive damages. The defendant, Exxon, then filed a supplemental brief (Doc. 46) on the issue of aggregation of punitive damages, requesting that the court refrain from ruling on this issue pending suggestion for rehearing en banc in *Cohen*. The court granted Exxon's request, instructing the defendant to notify the court after the Eleventh Circuit issues its mandate (Doc. 47). Exxon then filed a supplemental brief (Doc. 48), this time contending that notwithstanding the eventual disposition of *Cohen*, "recent Eleventh Circuit caselaw supports a separate and independent basis to establish the $75,000.01 amount in controversy threshold." The essence of this new basis for jurisdiction is that the plaintiffs claims represent an "common and undivided" interest, which would allow aggregation of compensatory damages in order to meet the jurisdictional minimum. The Eleventh Circuit's mandate was subsequently stayed pending a Petition for Writ of Certiorari in the Unit-

---

**2.** *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

**3.** *See United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir.1998).

**4.** Given that the plaintiffs have asserted that the putative class is composed of approximately 50 members, in order for the amount in controversy of $75,000 to be met by each of the class members on a pro rata basis, the total punitive damages would have to exceed $3,750,000.

**5.** *Blakely Corp. v. Murphy Oil Company*, CV–89–0767–CB–M, affirmed 11 F.3d 168 (11th Cir.1993); *Estate of T.K. Jackson v. Phillips Petroleum Company*, 676 F.Supp. 1142 (S.D.Ala.1987).

ed States Supreme Court, and certiorari was denied by the Supreme Court on October 30, 2000.

## II. DISCUSSION

■ Removal of a civil case from state to federal court is proper only if the case could have originally been brought in federal court. *See* 28 U.S.C. § 1441(a). Exxon asserts that removal was proper here because this case could have originally been filed in this court pursuant to 28 U.S.C. § 1332. Section 1332 grants federal subject matter jurisdiction over actions between citizens of different states in which the amount in controversy is greater than $75,000.

■ Unresolved doubts concerning the propriety of the removal must be resolved by remanding the action to state court. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994). Because federal courts are courts of limited jurisdiction, *see Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994), they must determine that they have subject matter jurisdiction over every case before proceeding to the merits of the case. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). Any unresolved uncertainties concerning the court's jurisdiction necessitate remand. *See University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (1999).

It is uncontroverted that in its notice of removal, defendant Exxon relies solely upon the theory of aggregated punitive damages in order to meet the jurisdictional requirement for subject matter jurisdiction. Additionally, it was the punitive damage aggregation theory of *Tapscott* upon which this court relied in concluding that the amount in controversy requirement was satisfied and consequently removal to be proper. *See Fuller v. Exxon*, 78 F.Supp.2d 1289, 1298 (S.D.Ala.1999). In fact, this court, in the same opinion, concluded that "the amount of the Fullers' claim for compensatory damages was not

sufficient to confer subject matter jurisdiction over this case at the time of removal." 78 F.Supp.2d at 1295. Since the *Cohen* decision has now determined the punitive damage aggregation holding of *Tapscott* to be a nullity under the prior panel precedent rule, the question presently before the court is whether or not this court's initial jurisdictional determination can somehow survive in spite of *Tapscott*'s demise.

To this end, the defendant Exxon has now put forth two new theories in order to meet the amount in controversy requirement of federal diversity jurisdiction. The first of these is that it is more likely than not that the amount in controversy requirement will still be satisfied, even when divided on a pro rata basis among the fifty putative class members. Exxon's second theory is that plaintiffs' action is one seeking to enforce a "common and undivided" right, allowing for the aggregation of compensatory damages among the putative class members. However, before reaching the merits of each of these theories, the court must first determine whether or not any new jurisdictional grounds should be considered at all.

■ A petition for removal of a civil action must be filed within thirty days after the defendant has received a copy of the initial pleading setting forth the claim for relief upon which the action is based. *See* 28 U.S.C. § 1446(b). A defendant may freely amend the notice of removal within the thirty day period of 28 U.S.C. § 1446(b). After the thirty day period has expired however, a party may only amend defective allegations of jurisdiction pursuant to 28 U.S.C. § 1653. Section 1653 does not permit a removing party to assert additional grounds of jurisdiction not included in the original pleading. *See American Educators Financial Corporation v. Bennett*, 928 F.Supp. 1113, 1115 (M.D.Ala. 1996); *Stafford v. Mobil Oil Corp.*, 945 F.2d 803 (5th Cir.1991); *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) (citation

omitted); 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice And Procedure § 3733 at 358–61 (3d ed. 1998) ("[T]he notice may be amended only to set out more specifically the grounds for removal that already have been stated, albeit imperfectly, in the original notice .... Completely new grounds for removal may not be added and missing allegations may not be furnished, however." (footnotes omitted)).

■ "[T]he courts that have addressed the issue have uniformly recognized that a defendant's ability to amend the removal petition after the thirty-day time limit for removal prescribed by § 1446 extends only to amendments to correct 'technical defects' in the jurisdictional allegations in the notice of removal ...." *Blakeley v. United Cable System*, 105 F.Supp.2d 574, 578 (S.D.Ala.2000); *see, e.g., Stein v. Sprint Communications Co.*, 968 F.Supp. 371, 374 (N.D.Ill.1997) ("[A] defendant may not amend its notice of removal after the 30–day limit in § 1446(b) to remedy a substantive defect in the petition"); *Spillers v. Tillman*, 959 F.Supp. 364, 372 (S.D.Miss. 1997) ("Although a defendant is free to amend a notice of removal within the 30–day period set forth in 28 U.S.C. § 1446(b), once the 30–day period has expired, amendment is not available to cure a substantive defect in removal proceedings."); *Wright v. Combined Ins. Co. of America*, 959 F.Supp. 356, 359 (N.D.Miss. 1997) ("If a defendant seeks to amend the notice of removal at any time thereafter, he may only do so to clarify the jurisdictional grounds for removal, which were unartfully stated in the original notice. He may not allege new jurisdictional grounds for removal."); *Iwag v. Geisel Compania Maritima*, 882 F.Supp. 597, 601 (S.D.Tex.1995) (finding that "[s]ection 1653

does not allow the removing party to assert additional grounds of jurisdiction not included in the original pleading," and thus holding that the court would "disallow amendments to notices of removal that present grounds for removal not included in the original notice").

■ Exxon's first alternative jurisdictional basis might be considered an attempt to cure a technical defect, as it states that while the punitive damage aggregation theory that it relied upon in the notice of removal is no longer valid, punitive damages can still satisfy the jurisdictional minimum, even on the pro-rata basis required by *Cohen*. In support of this contention, Exxon cites two cases where sizable verdicts were awarded, such that when divided pro rata among the plaintiffs exceeded the $75,000 minimum. *Blakely Corp. v. Murphy Oil Company*, CV–89–0767–CB–M, affirmed 11 F.3d 168 (11th Cir.1993)($4.6 million in punitive damages awarded to approximately 12 plaintiffs); *Estate of T.K. Jackson v. Phillips Petroleum Company*, 676 F.Supp. 1142 (S.D.Ala. 1987)(over $7.5 million awarded to two plaintiffs). However, other than the fact that these two verdicts were awarded in cases against oil companies, Exxon has provided the court no factual analysis that would indicate any basis of comparison between those cases and this one.[6] Furthermore, the Fullers have provided affidavits which refute the likelihood that a sizable punitive damage verdict will be awarded in this case.[7] Thus, this seemingly arbitrary and limited sampling of punitive damage verdicts against oil companies does not convince the court that it is "more likely than not" that punitive damages in this case will be greater than $3.5 million. *See Tapscott*, 77 F.3d at 1357.

---

**6.** In fact, the court notes that while the *Estate of T.K. Jackson* jury may have awarded $7.5 million in punitive damages, a motion for remitittur was granted by the district court judge, reducing this punitive damage award by over 90%. 676 F.Supp. at 1146.

**7.** Where it is not readily apparent from the face of the complaint that the amount in controversy exceeds the jurisdictional minimum at the time of removal, federal courts may examine affidavits and other evidence to help determine that the amount in controversy is sufficient. *See De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir.1993).

Exxon's second jurisdictional theory (aggregated compensatory damages) represents an entirely novel approach by it at satisfying the jurisdictional minimum. The court notes that "[t]he party seeking removal should take care to identify all possible bases of federal subject matter jurisdiction over the suit in its notice of removal because the district court may decline to assert jurisdiction over the case for reasons not averred in the removal notice and deny the removing party leave to amend its notice to include further grounds of federal subject matter jurisdiction after the expiration of the relevant time period." 14C CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE, § 3732 (Supp.2000).

■ While Exxon states that "recent Eleventh Circuit caselaw supports an independent basis to establish the $75,000.01 amount in controversy threshold," in fact, the "common and undivided" theory of damage aggregation is hardly a novel legal concept,[8] and has been discussed in a panoply of cases by a variety of different courts for many years.[9] Therefore, without reaching the merits of this claim, the court can recognize no reason why this argument could not have been presented alternatively at the time of removal or should be considered for the first time at this late date.

## III. CONCLUSION

For the foregoing reasons, the court concludes that its original determination that subject matter jurisdiction existed in this case, was incorrect in light of the subsequent ruling in *Cohen v. Office Depot.* Therefore, the court finds that is lacked subject matter jurisdiction over this matter because Exxon.has not shown by a preponderance of the evidence that the amount in controversy at the time of removal was greater than $75,000. *See Tap-*

*scott,* 77 F.3d at 1357. The court therefore *sua sponte* **REMANDS** this matter to the Circuit Court of Clarke County, Alabama. The **CLERK** is **DIRECTED** to take all steps necessary to effectuate this remand. Each party shall bear its own costs.

---

8. *See e.g., Zahn v. International Paper Co.,* 414 U.S. 291, 295, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Snyder v. Harris,* 394 U.S. 332, 335, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).

9. The "recent" Eleventh Circuit case to which Exxon cites is *Morrison v. Allstate Indemnity Co.,* 228 F.3d 1255 (2000) wherein the Court acknowledges the "common and undivided" theory as "arcane and confusing."